

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDIA COOP, LLC d/b/a HANGTIME MEDIA,<br><br>Plaintiff,<br><br>v.<br><br>BARCELÓ MAYA BEACH RESORT and BARCELÓ GROUP,<br><br>Defendants. | Case No.:  17  3403 |

## COMPLAINT

Plaintiff, Media Coop, LLC d/b/a Hangtime Media ("Plaintiff" or "Hangtime"), by and through its undersigned counsel, brings the following Complaint against Defendant, Barceló Maya Beach Resort, and Defendant, Barceló Group (collectively, "Barceló" or "Defendants"), and sets forth the following:

## NATURE OF THE ACTION

1. This is an action for copyright infringement and breach of contract resulting from Barceló's violation of Hangtime's copyrighted works and breach of a written services agreement, as more fully described herein.

2. Hangtime seeks, *inter alia*, an Order enjoining Barceló from further unauthorized use of Hangtime's copyrighted works, Barceló's profits attributable to its unlawful acts, counsel fees, compensatory and punitive damages and other relief under applicable law.

{0704-4112/00443835-1}

## THE PARTIES

3. Plaintiff, Hangtime, is a Pennsylvania limited liability company with its principal place of business at 1010 N. Hancock Street, Philadelphia, PA 19125.

4. Defendant, Barceló Maya Beach Resort, upon information and belief, is a Mexican-based company with a place of business at Carretera Chetumal-Puerto Juárez Km 266.3, Quintana Roo, Mexico 77750.

5. Defendant, Barceló Group, upon information and belief, is the corporate parent company of Barceló Maya Beach Resort, with a place of business at Josep Rover Motta, no. 27, 07006 Palma de Mallorca, Balearic Islands, Spain.

## JURISDICTION AND VENUE

6. This action arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§101 et seq. (the "Copyright Act"), and thus this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. The Court has personal jurisdiction over Barceló Maya Beach Resort, because Barceló Maya Beach Resort has agreed contractually to jurisdiction and venue in this District under the Master Services Agreement (as defined below), which is the subject of this action.

8. As the parent company of Barceló Maya Beach Resort, the Court has personal jurisdiction over Barceló Group, because Barceló Maya Beach Resort has legally bound Barceló Group to the Master Services Agreement (as defined below) it entered into with Hangtime.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(3) and the Parties' written agreement.

## BACKGROUND

10. Hangtime is a creator of cutting-edge photography and video content, used primarily in the hospitality and tourism industries, utilizing drone and modern technologies to create a unique style of destination content to present to potential travel buyers through online marketing channels.

11. Hangtime's business model is built on a licensing concept. All creative copyrights and other content that Hangtime creates is owned solely by Hangtime and can be resold, re-used or distributed at its discretion. The pricing of its services, which are well below market value, for productions of this quality are based solely on the ownership of the content and raw footage.

12. In this way, Hangtime produces copyrightable and customized photo and video content for its commercial clients' advertising and marketing purposes on their respective websites, and licenses the content for a fee and subject to the terms and conditions of Hangtime's Master Services Agreement and accompanying "Project Engagement(s)."

13. More specifically, Project Engagements are separate written documents which outline the specific scope of work Hangtime agrees to provide for a client and accompany a Master Services Agreement and are incorporated therein like the one described below and entered into by the Parties.

14. Pursuant to Section 2.1 of the Master Services Agreement, all Project Engagements are subject to the terms and conditions set forth in the Master Services Agreement.

15. Section 5.2 of the Master Services Agreement states specific terms regarding the use of Hangtime's "Work Product," which is defined as "all video & corresponding files both 'raw' and 'edited,' data, documentation, software, methodologies, know-how, tools and information delivered by [Hangtime] to client pursuant to a Project Engagement."

16. Additionally, pursuant to this section of the Master Services Agreement, the client agrees not to alter Hangtime's Work Product in any fashion and for any use unless there is express written consent of Hangtime.

17. The Master Services Agreement also states that all of Hangtime's Work Product, and all creative copyrights and goodwill associated with it, shall be owned by Hangtime and nothing in the Master Services Agreement shall operate to transfer ownership to the client.

18. During the term of the Master Services Agreement, and conditioned upon full payment of all fees and expenses due under all Project Engagements, Hangtime grants its client a non-exclusive, non-transferable license to use the Work Product.

19. This license has unrestricted client use across all promotional channels, however, placement of Work Product on social media including, but not limited to, Twitter, Facebook, YouTube, Vimeo, Instagram or any other similar promotional channel commonly recognized as 'social media' shall require 'Company Credit', which the Master Services Agreement defines as business entity name and branded logo and associated credited text such as but not limited to: "Created by Hangtime Media." In the event the client desires Company Credit removal, the client agrees to immediately pay a 'removal fee' of no less than seven thousand and five thousand dollars ($7,500.00 USD) for each such removal and use.

20. Principally, the Master Services Agreement makes clear that "[a]ll rights to the video and images belong to [Hangtime] and/or Assigns."

21. Section 4.4 of the Master Services Agreement states that if the client breaches the Master Services Agreement, Hangtime may suffer damages that will be difficult to ascertain, and the client shall compensate Hangtime for lost opportunities, as liquidated damages and not as a

penalty, in additional to all other rights and remedies available to Hangtime in law or in equity which may be granted by a court of competent jurisdiction.

22. Furthermore, this section provides that if the client breaches the Master Services Agreement following commencement of any Project Engagement, Hangtime shall be entitled to a "kill fee" of no less than the Total Project Cost, including any travel or general expenses incurred directly related to the Project Engagement(s), as well as fifty-percent (50%) of the remaining Project Engagement balance due and owing.

23. In Section 7.10, the Master Services Agreement also provides for the prevailing party's entitlement to attorneys' fees and other costs and expenses incurred in any litigation relating to a party's breach of the Master Services Agreement.

24. Lastly, the Section 7.5 of the Master Services Agreement contains a "Governing Law; Venue" provision which states that it shall be governed by and construed, interpreted, and enforced in accordance with the laws of the State of Pennsylvania and that the Parties agree that the sole and exclusive jurisdiction and venue for any disputes arising from the Master Services Agreement shall be in the federal or state courts sitting in the county of Philadelphia, Pennsylvania.

## Hangtime And Barceló's Master Service Agreement

25. On May 19, 2016 Hangtime and Barceló entered into a Master Services Agreement. A signed copy of the Parties' Master Services Agreement is attached hereto as Exhibit A.

26. Pursuant to the Parties' Master Services Agreement and Project Engagements, Hangtime agreed to provide (1) a number of long form and short form videos and (2) photography to Barceló for its use in its online marketing and promotion of its hotels/resorts, as detailed more specifically in the scope of work contained in the Parties' Video Project Engagement and the Photography Project Engagement (collectively, the "Project Engagements").

27. The agreed-upon Total Project Cost detailed in the Video Project Engagement was $151,900.00. A signed copy of the Parties' Video Project Engagement, dated May 19, 2016, is attached hereto as Exhibit B.

28. The agreed-upon Total Project Cost detailed in the Photography Project Engagement was $10,000.00. A signed copy of the Parties' Photography Project Engagement, dated February 2, 2017, is attached hereto as Exhibit C.

29. Hangtime is the sole owner of the Work Product that it created for Barceló, which is a copyrighted work, duly registered with the U.S. Copyright Office in accordance with law. Attached hereto as Exhibit D is a true and correct copy of Copyright Registration No. PA 2-044-952.

30. No relevant assignments exist in relation to any of the Work Product.

31. Pursuant to the terms of the Parties' Master Services Agreement, Hangtime licensed its Work Product related to the Project Engagements to Barceló.

32. Barceló became bound by the terms of the Master Services Agreement by, *inter alia*, signing the Master Services Agreement, and taking a license, as well as accepting and using Hangtime's Work Product.

### Barceló's Violation Of Hangtime's Intellectual Property Rights And Breach Of The Master Services Agreement By Using Hangtime's Work Product In An Unauthorized Manner

33. Pursuant to the terms of the Master Services Agreement, Hangtime completed the Video Project Engagement and subsequently provided the Work Product to Barceló over the course of several months, spanning from June 2016 to December 2016.

34. Similarly, Hangtime completed the Photography Project Engagement and subsequently provided the Work Product to Barceló thereafter, in or around February 2017.

35. On October 25, 2016, Hangtime became aware of Barceló's misuse of Hangtime's Work Product by posting Hangtime's Work Product on Barceló's social media pages without including proper "Company Credit," and notified Barceló of the issue via email. True and correct copies of this email correspondence are attached hereto as Exhibit E.

36. Barceló acknowledged the problem and took the Work Product down from the website. See Exhibit E.

37. On November 3, 2016, Barceló emailed Hangtime and proposed an alternative option to credit Hangtime in the form of a "mention" and a "tag" in all social media posts as a preferable option in lieu of including the Hangtime logo and "Created by Hangtime Media" text as required in the Master Services Agreement. True and correct copies of this email correspondence are attached hereto as Exhibit F.

38. However, this was never formally executed by the Parties as a modification to the Master Services Agreement, as required by the Master Services Agreement.

39. In or around April of 2017, Hangtime again became aware of Barceló's continued misuse of the Work Product, in violation of the Master Services Agreement and Hangtime's intellectual property rights, by posting and sharing the Work Product to social media websites without Hangtime's consent or approval, in violation of Section 5.2 of the Master Services Agreement.

40. Hangtime has documented approximately fifty-seven (57) instances of Barceló posting and sharing on its social media websites the Work Product without giving the proper "Company Credit," as required under Section 5.2 of the Master Services Agreement, and four instances of Barceló altering the Work Product, also in violation of this section of the Master Services Agreement.

41. Further and despite demand for payment, Barceló did not pay Hangtime the $7,500.00 "removal fee" in exchange for its failure to provide the proper "Company Credit" as required by the Master Services Agreement.

42. As described more fully above, Hangtime only licenses, and does not sell ownership to or rights in, its Work Product to clients, including Barceló.

43. By way of letter sent by Hangtime's counsel to Barceló on May 7, 2017, Hangtime demanded Barceló cease and desist its unauthorized use of Hangtime's Work Product, and advised Barceló that Hangtime would initiate legal action against Barceló should it continue to breach the terms of the Master Services Agreement. True and correct copies of the cease and desist letter is attached hereto as Exhibit G.

44. Barceló received the cease and desist letter from Hangtime's counsel, and Barceló's counsel requested additional time in which to respond. However, Hangtime's counsel never received a response from Barceló's counsel and instead, Barceló made a settlement offer to Hangtime directly via email, which Hangtime did not accept. True and correct copies of this email correspondence are attached hereto as Exhibit H.

45. Barceló has been notified of its breach of the Master Services Agreement and its violation of Hangtime's intellectual property rights, and despite demands that it cease and desist its unauthorized use of Hangtime's Work Product, Barceló continues to disregard Hangtime's contractual and other legal rights by continuing to misuse the Work Product.

46. Barceló has received a direct and substantial benefit from the infringing activity, as more fully described above.

47. As a result of Barceló's misuse of Hangtime's Work Product, Hangtime now seeks compensation and to enjoin Barceló from further infringement of Hangtime's intellectual property rights and violation of its contractual rights.

48. As a result of the foregoing conduct by Barceló, Hangtime has suffered and will continue to suffer significant, irreparable harm and loss.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

49. Hangtime incorporates by reference paragraphs 1 through 48 of its Complaint as though fully set forth herein.

50. The aforesaid conduct of Barceló constitutes willful copyright infringement under, *inter alia*, 17 U.S.C. § 501 and 17 U.S.C. § 506. 62. The Work Product specified herein are copyrightable subject matter under the laws of the United States.

51. Hangtime has complied in all respects with the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq., and all other laws governing copyright to secure the exclusive rights and privileges in and to the copyrights of the items identified herein.

52. The unauthorized use and alteration of Hangtime's Work Product exposes Hangtime to serious harm and diminishes the value of the rights exclusively owned by Hangtime.

53. Unless Barceló is restrained and enjoined from its unauthorized use and alteration of the Work Product, these injuries will continue to occur.

54. Irreparable harm and injury to Hangtime are imminent as a result of Barceló's conduct and Hangtime is without an adequate remedy at law.

55. Pursuant to 17 U.S.C. § 502(a), Hangtime is entitled to an injunction restraining Barceló, its employees and agents, and all other persons acting in concert with them, from engaging in any further improper acts.

56. Pursuant to 17 U.S.C. § 504, Hangtime is entitled to damages and Barceló's profits in amounts to be proven at trial, or alternatively, any statutory damages to which Hangtime is legally entitled to recover with respect to each work infringed.

57. Pursuant to 17 U.S.C. § 505, as well as the Parties' Master Service Agreement, Hangtime is entitled to an award of attorneys' fees and costs.

## COUNT TWO

## BREACH OF CONTRACT

58. Hangtime incorporates by reference paragraphs 1 through 57 of its Complaint as though fully set forth herein.

59. In connection with its business relationship with Hangtime, Barceló entered into the Master Services Agreement with Hangtime.

60. Therein, Barceló undertook contractual duties to comply with the Master Service Agreement and the license given by Hangtime as well as pay all fees to Hangtime. It also was obligated to include proper Company Credit when posting Hangtime's Work Product to its social media websites and to not alter Hangtime's Work Product in any fashion or for any use without the express written consent of Hangtime.

61. As stated above in detail, Barceló breached its contractual obligations, and wrongfully used Hangtime's Work Product and posting and sharing same on its social media sites without proper Company Credit/logos, and altering the Work Product without authorization to do so, Barceló breached its contractual obligations under the Master Services Agreement.

62. The unlawful actions of Barceló as aforesaid violate the terms and conditions of the Parties' Master Services Agreement.

63. As a direct and proximate result of the foregoing breaches of contract, Hangtime has suffered and will continue to suffer substantial monetary damages in an amount exceeding $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Media Coop, LLC d/b/a Hangtime Media, demands judgment in its favor and against Defendant, Barceló Maya Beach Resort, and Defendant, Barceló Group, as follows:

A. A judgment that Barceló has engaged in willful direct copyright infringement; and

B. Under the authority of 17 U.S.C. § 502, that Barceló and its agents, employees, successors, assigns and all those controlled by them, or in active concert or participation with them, be preliminarily and permanently enjoined from:

1. Using, misusing, altering, modifying, creating derivative works from, displaying and distributing Hangtime's Work Product; and

2. Committing further acts of copyright infringement; and

C. Under the authority of 17 U.S.C. § 503(a), an Order directing Barceló to take down any and all postings of Hangtime's Work Product on its website, its social media accounts, or any other affiliated websites; and

D. Under the authority of 17 U.S.C. § 504, an Order requiring Barceló to account to Hangtime for, and to disgorge in favor of Hangtime, the profits of Barceló from its infringement of Hangtime's rights; and

E. Under the authority of 17 U.S.C. § 504, an award of any statutory damages to which Hangtime is legally entitled to recover with respect to each work infringed; and

F. Under the authority of 17 U.S.C. § 505 and by way of the contractual agreement between the Parties, an Order allowing the recovery by Hangtime of the full costs of this action, including Hangtime's reasonable attorneys' fees; and

G. Award of compensatory damages for Barceló's breach of contract in an amount to be determined at the time of trial, which is anticipated to be in excess of $75,000; and

H. That a judgment be entered for Hangtime against Barceló for punitive damages in excess of $1,000,000 in view of the willfulness and egregious nature of Barceló's misconduct as against Hangtime; and

I. That Barceló be ordered to pay to Hangtime interest and costs incurred in maintaining this action and Barceló's unlawful conduct referenced herein; and

J. Award such other relief that the Court deems equitable, just and appropriate under the circumstances.

### JURY DEMAND

Hangtime respectfully demands a trial by jury on all issues so triable.

Respectfully Submitted,

NICOLL DAVIS & SPINELLA LLP

Dated: July 28, 2017

Nicoll Davis & Spinella LLP
Two Logan Square, 100 North 18th Street, Suite 300
Philadelphia, PA 19103
William Farran, Esq.
Phone: (215) 821-9676
Fax: (201) 712-9444
Attorneys for Plaintiff
Media Coop, LLC d/b/a Hangtime Media